## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| | * |
| UNITED STATES OF AMERICA, | |
| | * |
| v. | * |
| | Crim. No. 13-116-BAH |
| LOUSHAWN ADARYL ROBINSON, | * |
| Defendant. | * |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### <u>MEMORANDUM OPINION</u>

Loushawn Adaryl Robinson ("Robinson") is currently incarcerated at FMC Devens serving an agreed-upon sentence of 151 months for his participation in an armed bank robbery.  On January 11, 2024, Robinson filed a motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion").  ECF 86.  The Motion was filed pro se, and the Office of the Federal Public Defender declined to supplement it or to seek to represent Robinson.  *See* ECF 88. Robinson filed a number of supplements to his motion before the Government filed a response. *See* ECFs 90, 93, and 94.   On December 24, 2024, the Government filed a response, under seal, opposing the Motion.  ECF 101; *see also* ECF 100 (motion to seal).  Robinson filed two replies. *See* ECFs 102 and 103.  On January 31, 2025, the case was reassigned to the undersigned from Judge Blake, and Robinson subsequently filed several requests for an update on the status of the Motion, *see* ECFs 104 and 105, as well as an additional supplement to the Motion, *see* ECF 106. The Court has thoroughly considered the Motion and reviewed all relevant filings.  For the reasons noted below, the Motion is **DENIED**.

During the COVID-19 pandemic, Robinson unsuccessfully petitioned Judge Blake for immediate release due to Robinson's concern that his type 1 diabetes and hypertension increased

his risk of developing a serious illness.  ECF 71, at 2 (memorandum opinion denying compassionate release); *see also* ECF 72 (implementing order).  Though Judge Blake agreed that Robinson was "at elevated risk of severe illness related to Covid-19" and thus had established the "extraordinary and compelling reasons" necessary for compassionate release, his prior motion was nonetheless denied because "the § 3553(a) factors weigh[ed] against granting relief based on Robinson's history and characteristics and the court's conclusion that Robinson remains a danger to the community."  ECF 71, at 4.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The facts underlying Robinson's conviction and sentence are summarized in Robinson's plea agreement.  ECF 25, at 11.  In short, on September 29, 2012, Robinson and two accomplices, one of whom brandished a firearm, robbed a bank in Sykesville, Maryland.  *Id.*  Robinson and his accomplices wore masks, and during the course of the robbery Robinson led a teller into the bank vault against her will.  *Id.*  Robinson later zip-tied the teller's hands and fled with $28,411.  *Id.* After dropping some of the money in the parking lot of the bank, police pursued the men and apprehended Robinson after a short vehicle chase.  *Id.*

Robinson ultimately pled guilty to one count of armed bank robbery, forced accompaniment, in violation of 18 U.S.C. § 2113(e).  ECF 32, at 1.  Robinson conceded in his plea agreement that prior to the 2012 bank robbery, he had been convicted of two prior "felony crimes of violence," including a 1999 conviction in Baltimore County for robbery with a deadly and dangerous weapon for robbing a pizza delivery driver at gunpoint and a 2001 conviction in Carroll County for armed robbery for the robbery at gunpoint of a Wendy's in Eldersburg, Maryland.  ECF 25, at 11; *see also* ECF 34, at 7–9 (pre-sentence report).  Robinson was also previously convicted of robbing a Roy Rogers restaurant in Eldersburg, Maryland, on October 10, 2000.  ECF 34, at 9. The advisory guidelines recommended a sentence of between 188 to 235 months in prison.  ECF

2

25, at 5; ECF 34, at 11.  However, the parties agreed pursuant to Fed. R. Crim. P. 11(c)(1)(C) that a sentence of 151 months was the appropriate disposition of the case.  ECF 25, at 6.  On February 12, 2014, Judge Blake agreed to accept the plea agreement and sentenced Robinson to serve 151 months in the custody of the Bureau of Prisons ("BOP") followed by 5 years of supervised release.  ECF 35.

In 2016, Robinson filed a motion to correct his sentence pursuant to 28 U.S.C. § 2255. ECF 50.  That motion was subsequently withdrawn.  ECF 58.  Robinson then sought compassionate release, ECF 60, which the Government opposed, ECF 69.  As noted, Judge Blake ultimately denied that motion on November 5, 2021.  *See* ECFs 71 and 72.  Just over a year later, Robinson again filed a motion seeking compassionate release.  ECF 73.  On February 8, 2023, Judge Blake again denied compassionate release.  ECF 82.  Less than a year after that, Robinson filed the Motion.  ECF 86.

## II.    LEGAL STANDARD

A sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Stavrakis,* Crim. No. ELH-19-0160, 2025 WL 2897668, at *13 (D. Md. Oct. 9, 2025) (collecting cases).[1]  But, "the rule of finality is subject to a few narrow exceptions," *Freeman v. United States*, 564 U.S. 522, 526 (2011), such as when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020).

---

[1] Much of this section is taken directly from Judge Hollander's opinion in *Stavrakis*.  Other sections are borrowed from earlier opinions of Judge Blake.  Both esteemed jurists were meticulous in summarizing the relevant law and any effort to improve on their exhaustive work would be futile. As such, much of this is lifted word-for-word from their prior work, but with deep respect and admiration.

One exception is 18 U.S.C. § 3582, which is commonly referred to as "compassionate release" and was first enacted as part of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). *See United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release"). Specifically, § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the Court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

With the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018), codified as 18 U.S.C. § 3582(c)(1)(A), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020). As a result, a federal inmate may now file a motion for compassionate release directly with the Court, as long as the inmate first exhausts administrative remedies. *See McCoy*, 981 F.3d at 283.

Courts use a two-step process in evaluating motions for compassionate release under the § 3582(c)(1)(A) criteria mentioned above. *See United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). The first step consists of two parts, which "are supposed to work together."

*United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025). The Court "must determine: (1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Stavrakis*, 2025 WL 2897668, at *14 (citing *United States v. Malone,* 57 F.4th 167, 173 (4th Cir. 2023)). When there was no applicable policy statement relating to compassionate release motions, the Court had discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th at 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider any extraordinary and compelling reason for release" (cleaned up)). However, in 2023, the Sentencing Commission issued guidance about what qualifies as extraordinary and compelling reasons to grant relief to a defendant who moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. The Fourth Circuit has held that "district courts deciding motions for compassionate release after November 1, 2023, should apply § 1B1.13 when rendering their decisions." *United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025). Robinson anchors his request in U.S.S.G. §1B1.13(b)(1)(A), which notes that "[e]xtraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness" such as "end-stage organ disease[.]"

If both parts of step one are satisfied, the Court then proceeds to the second step and determines whether release is appropriate in light of the sentencing factors listed in 18 U.S.C. § 3553(a) "to the extent those factors are applicable." *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022).

### III. ANALYSIS

#### A. Administrative Exhaustion

As noted, "[t]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the Bureau of Prisons to bring a motion on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021). Robinson alleges that submitted a request "to the warden" that was denied on November 21, 2023. ECF 86, at 3. It is unclear whether Robinson then appealed this decision. However, the Government does not appear to dispute that Robinson has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) and thus the Court will proceed to evaluate the Motion on the merits.

#### B. Extraordinary and Compelling Circumstances

Robinson primarily raises one ground in support of his claim that he has established extraordinary and compelling circumstances for compassionate release: his need for a new kidney.[2] ECF 86, at 4; ECF 90, at 1; ECF 106, at 2. The Government opposes and notes that "end stage renal disease standing alone, does not qualify for compassionate release." ECF 101, at 2. The Government notes that while organ failure is undoubtedly an example of the type of ailment that may warrant compassionate release under U.S.S.G. § 1B1.13(b)(1)(A), it observes that the failure of Robinson's kidneys is not terminal since he is being adequately "treated regularly with

---

[2] Robinson later clarified that he suffers from a "variety of medical conditions including diabetes, hypertension, and chronic kidney disease." ECF 102, at 1 (internal quotations omitted). Recent updates filed by Robinson appear to take issue with the BOP's failure to reduce his sentence to account for his participation in programming. ECF 94, at 1–2. He also alleges without support that if he were sentenced today, he'd receive only "121 months." ECF 90, at 2. Given that the Motion will be denied at the second step – the application of the factors under 18 U.S.C. § 3553(a) – the Court will not address these vague assertions of extraordinary and compelling circumstances.

dialysis." *Id.* at 3.  As to Robinson's apparent claim that he is being denied a kidney transplant, *see* ECF 86, at 4, the Government argues that Robinson has failed to attend the required class to be considered for a transplant, ECF 101, at 4.  The Government also notes that as of November 6, 2024, Robinson's medical records reflected that "his energy level [was] fair and his appetite [was] good." *Id.* at 3.

Robinson does not appear to dispute that he is on dialysis, nor does he contest the claim that he has not taken the transplant class.  ECF 103, at 2.  Instead, he argues that he cannot receive an organ transplant because he is "to[o] short," meaning that he is too close to his release date to be considered for a transplant.  *Id.*  In his most recent filing, he again claims that BOP "continue[s] to deny [him] a kidney transplant."  ECF 106, at 2.

The Court recognizes that Robinson is undoubtedly suffering from the loss of kidney function and is currently on dialysis.  ECF 101, at 9 (medical records under seal).  This fact alone does not automatically mean that Robinson qualifies for compassionate release.  *See United States v. Saravia*, No. 1:12-CR-255-007 (RDA), 2024 WL 4845972, at \*3 (E.D. Va. Nov. 20, 2024) (collecting cases and noting that "[c]ourts have denied motions for compassionate release premised on similar diagnoses of end stage renal failure, type II diabetes, and hypertension"); *United States v. Bradley*, No. 2:22-CR-00098, 2024 WL 4535468, at \*2 (S.D. W. Va. Oct. 18, 2024) (denying motion despite noting that the defendant was "in end-stage renal failure, which would otherwise qualify as an extraordinary and compelling reason to grant compassionate release").  While the veracity of Robinson's assertion that he is being prevented from receiving a kidney transplant in custody is unclear,[3] a March 22, 2026 decision of the Warden of FMC Devens denying

---

[3] The Court notes that other inmates seeking compassionate release have alleged that BOP will not facilitate a kidney transplant for inmates who are within a few years of their release date.  *See United States v. Bethea*, No. CR 3:14-430-JFA, 2025 WL 3012935, at \*3 (D.S.C. Oct. 28, 2025)

compassionate release reflects that Robinson "reside[s] in an open housing unit [and is] independent with his activities of daily living." ECF 106-1, at 2. Citing to available medical records, the Warden concludes that "FMC Devens is able to manage [Robinson's] medical needs at this time." *Id.* Of course, Robinson makes repeated assertions that FMC Devens is understaffed, and he provides some news reports and emails of undetermined origin to support that claim. ECF 106-1, at 14–19. That Robinson's condition is being adequately treated weighs against the granting of compassionate release. *See United States v. Byrd*, 859 F. App'x 669, 670 (4th Cir. 2021) (affirming denial of compassionate release where the defendant's records did "not indicate that [the defendant] is currently struggling with maintain[ing] his health or that the BOP is unresponsive to his needs"). But the competing narratives before the Court mean that the conclusion of whether Robinson's kidney failure (and his related treatment) presents an extraordinary and compelling reason for release is not reached as easily as the Government suggests. Regardless, even assuming his present situation establishes the requisite extraordinary and compelling reasons, the Court cannot find that an application of the factors in 18 U.S.C. § 3553(a) favor release.

### C.    Application of the Factors Under 18 U.S.C. § 3553(a)

As noted, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). These factors include (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) the need for a sentence to "provide just punishment," "promote respect for the law," "reflect the seriousness of the offense,"

---

("[T]he defendant says that his kidney transplant is being hindered because 'he is under three years' and 'while on BOP home confinement can't apply for a kidney transplant.'").

deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) "the need to avoid unwarranted sentencing disparities among" similarly situated defendants. 18 U.S.C. § 3553(a).

Robinson's record reveals multiple robberies involving firearms. *See* ECF 34, at 10 (designating Robinson as a "career offender" under U.S.S.G. § 4B1.1 due to "at least two prior felony convictions involving crimes of violence"). As Judge Blake noted, "Robinson was convicted of a serious felony involving the use of force, and this was not the first time Robinson engaged in conduct dangerous to the community." ECF 71, at 4. Moreover, despite a prior denial of compassionate release being based, in part, on Robinson's "serious disciplinary record in the [BOP]," *id.* at 4–5, it appears that Robinson continued to be found in violation of the rules while in custody after Judge Blake's finding, ECF 101, at 12–13 (noting violations and loss of privileges for conduct occurring in 2023 and 2024). Robinson is eligible for possible release to home confinement on June 16, 2026, meaning his request, as of this writing, amounts to a request to accelerate his release by just over a month.[4] ECF 106, at 3; ECF 106-1, at 4 (notice from Warden confirming placement date for home confinement on June 16, 2026). Regardless of its relatively modest duration, the Court cannot find that consideration of the § 3553(a) factors merits a reduction in Robinson's sentence.

## IV.    CONCLUSION

---

[4] Indeed, given that were the Court to grant the Motion it would likely stay the implementation of any release order to provide the BOP with time to prepare for and effectuate Robinson's orderly release, Robinson may ultimately receive the same relief he is seeking through the BOP's own release process.

For the reasons noted above, Robinson's motion for compassionate release, ECF 86, will be denied.  The Government's motion to seal, ECF 100, will be granted for the reasons noted in the motion.

A separate implementing order will issue.

Dated: <u>May 5, 2026</u>

_____/s/_____

Brendan A. Hurson
United States District Judge
